```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x

 3   UNITED STATES of AMERICA,

 4            -against-                    18 CR 00625
                                           Plea
 5
     JAMES SPINA,
 6
                    Defendant.
 7
     ------------------------------------x
 8
                                   United States Courthouse
 9                                 White Plains, New York
10
                                   May 2, 2019
11
12   B e f o r e:  THE HONORABLE JUDITH C. McCARTHY,
                                   United States Magistrate Judge
13

14

15

16   GEOFFREY S. BERMAN
          United States Attorney for
17          the Southern District of New York
     BY:  KATHRYN M. MARTIN
18          Assistant United States Attorney

19

20   HODGES WALSH & BURKE LLP
               Attorneys for Defendant
21   BY:  MICHAEL K. BURKE

22

23

24

25

                   Angela O'Donnell, RPR, 914-390-4025
```

```
 1              THE CLERK:  In the matter of the United States of
 2   America versus James Spina.
 3              Counsel, please state your appearances for the
 4   record.
 5              MS. MARTIN:  Good evening, your Honor.
 6              Kathryn Martin for the government and with me at
 7   counsel table is FBI Special Agent Eugene Hagan.
 8              THE COURT:  Good evening.
 9              MR. BURKE:  Good evening, your Honor.  Michael Burke,
10   Hodges, Walsh & Burke on behalf of James Spina.
11              THE COURT:  Good evening, Mr. Burke.  And good
12   evening, Mr. Spina.
13              I kind of want to say it's still afternoon, since
14   we're only at 5:15.
15              MS. MARTIN:  I just said that to the agent.  I'm like
16   I probably should have said afternoon.
17              MR. BURKE:  She started it.
18              THE COURT:  It's still the afternoon.
19              MS. MARTIN:  That's a fair characterization;
20   afternoon.
21              THE COURT:  Maybe late afternoon, but still
22   afternoon.
23              So I believe we're here because Mr. Spina is prepared
24   to plead guilty; is that correct?
25              MS. MARTIN:  That is correct, your Honor.  This
```

1    matter is currently pending before Judge Karas and he has

2    referred the plea to your Honor.

3              THE COURT:  Okay.  I am going to, Mr. Spina, this is

4    a long proceeding and there's a long series of questions I have

5    to ask you.  So I'm going to allow you to remain seated

6    throughout this.  It's also, I think, going to be easier to get

7    a good recording and I see that Mr. Burke has pulled the

8    microphone in front of you.

9              So I ask that when I ask you some questions, the

10   questions I ask you, just speak clearly and loudly so that the

11   microphone will allow the transcription to be clear.  Okay?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  So I want to advise you,

14   Mr. Spina, that this is not a trial.  It's my understanding

15   that you've decided to enter a guilty plea.

16             This proceeding is for the purpose of ensuring that

17   you are aware of your rights in connection with your plea and

18   that any waiver of those rights is knowing and voluntary prior

19   to entering your guilty plea.

20             If at any time you do not hear or understand what I

21   say to you, please interrupt me so that I can repeat and

22   explain what I've said.  If you want to confer with your

23   attorney regarding anything I say, please interrupt me so that

24   you can do that.

25             Do you understand that?

 1           THE DEFENDANT:  I do, your Honor.

 2           THE COURT:  I also want to advise you that you have

 3   the right to be represented by counsel throughout the entire

 4   case, and you may consult with your attorney at any stage of

 5   this proceeding.

 6           You also have the right to remain silent.  Any

 7   statement that you do make may be used against you.  You have

 8   this right to remain silent even if you already made statements

 9   to law enforcement officers.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Ms. Hummel, could you please place

13   Mr. Spina under oath or affirmation.

14           (James Spina sworn)

15           THE COURT:  It's important for you to understand,

16   Mr. Spina, that if you knowingly make a false statement during

17   these proceedings, you could be subject to prosecution for the

18   crime of perjury, or for making a false statement to the Court,

19   and you could face a punishment of up to five years

20   imprisonment and a $250,000 fine for committing such a crime.

21   Such punishment would be separate and apart from any sentence

22   you may be facing on the crime charged in the felony

23   indictment.

24           Do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  What is your full name?

2          THE DEFENDANT:  James Spina.

3          THE COURT:  And how old are you?

4          THE DEFENDANT:  Sixty-one.

5          THE COURT:  Are you a United States citizen?

6          THE DEFENDANT:  I am.

7          THE COURT:  How far did you go in school?

8          THE DEFENDANT:  High school, college, chiropractor

9     school.

10          THE COURT:  You completed college and completed

11     chiropractor school; right?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Okay.  And was the chiropractor school

14     after college?

15          THE DEFENDANT:  Yes, it was.

16          THE COURT:  Thank you.  Are you currently or have you

17     been recently under the care of a doctor or psychiatrist for

18     any reason?

19          THE DEFENDANT:  I have not.

20          THE COURT:  Have you taken any mind-altering drugs,

21     medicines or pills, or consumed any alcohol in the last 24

22     hours?

23          THE DEFENDANT:  I have not.

24          THE COURT:  Have you ever been hospitalized or

25     treated for alcoholism or drug addiction?

 1              THE DEFENDANT:  I have not.

 2              THE COURT:  Is your mind clear today?

 3              THE DEFENDANT:  It is.

 4              THE COURT:  Do you understand what's happening at

 5     this proceeding?

 6              THE DEFENDANT:  I do.

 7              THE COURT:  Does either counsel have any objection to

 8     the defendant's competence to proceed at this time?

 9              MS. MARTIN:  No, your Honor.

10              MR. BURKE:  No, your Honor.

11              THE COURT:  This proceeding is called a plea

12     allocution.  I want you to understand that you have an absolute

13     right to have this plea allocution conducted before a United

14     States District Judge.  It is the district judge who will

15     impose the sentence in this case.

16              If you consent, then I will conduct the plea

17     allocution and I will then make a report to the district judge

18     in which I will recommend whether or not the district judge

19     should accept the plea of guilty.  I will make that

20     recommendation based on the information that is brought out

21     during today's proceedings.

22              It is important for you to understand that the Court

23     will not accept your plea unless the Court is satisfied that

24     you fully understand all of your rights and that you are, in

25     fact, guilty.  Do you understand that?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Do you understand that you have an

3    absolute right to have this plea allocution conducted before a

4    United States District Judge?

5              THE DEFENDANT:  I do.

6              THE COURT:  Is it your wish that I conduct the plea

7    allocution?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Mr. Burke, did your client sign a consent

10   to proceed before a United States Magistrate Judge on a felony

11   plea allocution?

12             MR. BURKE:  Yes, he has.

13             THE COURT:  Ms. Hummel, could you please have the

14   defendant identify his signature on this form.

15             THE CLERK:  Mr. Spina, I show you this consent to

16   proceed before a United States Magistrate Judge on a felony

17   plea allocution form which you've signed and dated today,

18   May 2, 2019.  Is that your signature?

19             THE DEFENDANT:  Yes, it is.

20             THE CLERK:  Before signing this form, did you have a

21   chance to read it and review it with your attorney?

22             THE DEFENDANT:  I did.

23             THE COURT:  Thank you.

24             Okay, so I have before me the consent to proceed

25   before a United States Magistrate Judge on a felony plea

1    allocution that you have signed.  What this form says,

2    Mr. Spina, is that knowing you have the right to have this plea

3    taken by a United States District Judge, you are agreeing to

4    have the plea taken by me, a United States Magistrate Judge; is

5    that correct?

6                  THE DEFENDANT:  Yes, your Honor.

7                  THE COURT:  Before you signed the form, did your

8    lawyer explain it to you?

9                  THE DEFENDANT:  I read it and, yes, he did.

10                 THE COURT:  Did anyone threaten or coerce you or

11   promise you anything in order to get you to sign the form?

12                 THE DEFENDANT:  No, they did not.

13                 THE COURT:  Did you sign the form freely and

14   voluntarily?

15                 THE DEFENDANT:  I did.

16                 THE COURT:  Counsel, do either of you know of any

17   reason why the waiver and consent to proceed with this plea

18   allocution before a United States Magistrate Judge should not

19   be accepted?

20                 MS. MARTIN:  No, your Honor.

21                 MR. BURKE:  No, your Honor.

22                 THE COURT:  I find the defendant, James Spina, is

23   fully competent and understands the proceedings before him.  I

24   also find he's capable of waiving his right to appear before a

25   United States District Judge in order to enter his guilty plea

1   and I therefore accept the consent form, which has been signed

2   and is now part of the Court record.  The consent form is

3   marked as Court Exhibit 1 and will remain in the court file.

4           Mr. Spina, I've been informed you wish to change your

5   plea and to enter a plea of guilty as to certain charges; is

6   that correct?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Before deciding whether to accept your

9   guilty plea, I'm going to ask you certain questions.  It's very

10   important that you answer these questions honestly and

11   completely.  The purpose of these proceedings is to make sure

12   that you understand your rights, to decide whether you're

13   pleading guilty of your own free will, and to make sure that

14   you're pleading guilty because you are guilty, and not for some

15   other reason.  Do you understand that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  If you don't understand any of the

18   questions, or if you want at any time to consult with your

19   attorney, please say so because it's important that you

20   understand every question before you answer it.  Do you

21   understand that?

22           THE DEFENDANT:  I do.

23           THE COURT:  So I have before me the indictment

24   containing the charges against you in this case.  This is a

25   three-count indictment that you've been charged in.

1          Count One is conspiracy to commit healthcare fraud.

2   Count Two is healthcare fraud.  Count Three is obstruction of a

3   federal audit.

4          Count One, which is conspiracy to commit healthcare

5   fraud, is the count that you will be pleading guilty to

6   pursuant to the plea agreement and that is -- Count One, the

7   conspiracy to commit healthcare fraud is in violation of Title

8   18, United States Code, Section 1349.

9          Count Two, which is healthcare fraud, is in violation

10  of Title 18, United States Code, Section 1347.

11         And Count Three is obstruction of a federal audit in

12  violation of Title 18, United States Code, Section 1516.

13         Have you had an opportunity to review the indictment?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand what it says?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you need me to read it in open court?

18         THE DEFENDANT:  I do not.

19         THE COURT:  Have you had time to talk to your

20  attorney about these charges and about how you wish to plead?

21         THE DEFENDANT:  I have, your Honor.

22         THE COURT:  Have you discussed with your attorney the

23  charges against you, including the charges you intend to plead

24  guilty to, as well as any other charges that the government may

25  have made in this case?

1              THE DEFENDANT:  I have, your Honor.

2              THE COURT:  Has your attorney told you the

3    consequences of pleading guilty?

4              THE DEFENDANT:  Yes, he has, your Honor.

5              THE COURT:  And are you satisfied with your

6    attorney's representation of you?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  And have you told your attorney

9    everything you know about this case?

10              THE DEFENDANT:  I have, your Honor.

11              THE COURT:  Okay.  So who has the original plea

12   agreement?

13              MS. MARTIN:  I have it.

14              THE DEFENDANT:  May I ask him one question?

15              THE COURT:  Yes.  Yes, you could confer with your

16   attorney.  Yes.

17              (Pause)

18              MR. BURKE:  We're all set, your Honor.

19              THE COURT:  Okay.  So the original plea agreement is

20   going to be marked as a government exhibit, and it's going to

21   remain in the custody of the government's attorney.

22              Ms. Hummel, could you please have the defendant

23   identify his signature on the last page of the plea agreement.

24              THE CLERK:  Mr. Spina, I show you this plea

25   agreement, which is dated May 2, 2019, which you also signed

                Angela O'Donnell, RPR, 914-390-4025

1    and dated today, May 2, 2019.

2              Is that your signature?

3              THE DEFENDANT:  It is.

4              THE CLERK:  Before signing this document, did you

5    have a chance to read it and review it with your attorney?

6              THE DEFENDANT:  I did.

7              THE CLERK:  Thank you.

8              THE COURT:  Mr. Burke, did you review each and every

9    part of this plea agreement with your client?

10             MR. BURKE:  I did, your Honor.

11             THE COURT:  Okay.  And Mr. Spina, are you satisfied

12   you understand this entire plea agreement which your lawyer has

13   reviewed with you?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you have any questions, either for me

16   or for your lawyer, about what this plea agreement says?

17             THE DEFENDANT:  I do not.

18             THE COURT:  Does this plea agreement contain the

19   complete understanding between you and the government in

20   connection with this case?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you understand that anything which is

23   not set forth in the plea agreement, or which is not told to me

24   at this time on the record, will not be binding on the outcome

25   of your case?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Ms. Martin, is there anything beyond the

3    written plea agreement that the Court should be aware of?

4          MS. MARTIN:  No, your Honor.

5          THE COURT:  And Mr. Burke, is there any other

6    agreement the Court should know about?

7          MR. BURKE:  No, your Honor.

8          THE COURT:  Mr. Spina, did you sign this plea

9    agreement freely and voluntarily?

10          THE DEFENDANT:  I did, your Honor.

11          THE COURT:  Did anyone force you or coerce you or

12    threaten you or promise you anything other than what is set

13    forth in the written plea agreement in order to get you to sign

14    the plea agreement?

15          THE DEFENDANT:  No, they have not, your Honor.

16          THE COURT:  Okay.  I want to go over certain aspects

17    of the plea agreement with you to make sure that you understand

18    what you're agreeing to.

19          You are agreeing to plead guilty to Count One of the

20    indictment which charges you with conspiracy to commit

21    healthcare fraud from in or about 2011 through in or about

22    September 2017, in violation of Title 18, United States Code,

23    Section 1349.

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor, I do.

1              THE COURT:  And if you are convicted of the charge

2      contained in Count One of this felony indictment, either after

3      trial or by a plea of guilty, you'd be subject on Count One to

4      a maximum sentence of ten years imprisonment, a maximum term of

5      three years supervised release, a maximum fine pursuant to

6      Title 18, United States Code, Section 3571, of the greatest of

7      $250,000, twice the gross pecuniary gain derived from the

8      offense, or twice the gross pecuniary loss to a person other

9      than you as a result of the offense and a mandatory $100

10     special assessment.

11             Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  If you are sentenced to a term of

14     imprisonment, even if you are sentenced to the maximum term of

15     imprisonment, and if you're also sentenced to a term of

16     supervised release, and if you then violate the conditions of

17     supervised release, you could be sentenced to an additional

18     term of imprisonment for violating the conditions of your

19     supervised release, which, in this case, would be an additional

20     term of up to two years.

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  In addition, if you violate the

24     conditions of your supervised release, you would not receive

25     credit for any time already served in prison or for time served

1    on supervised release.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Under this plea agreement, Mr. Spina, you

5    are also admitting to the forfeiture allegation with respect to

6    Count One of the indictment, and you're agreeing to forfeit to

7    the US a sum of money of at least $1.5 million, but not more

8    than $65 million in US currency, representing proceeds

9    traceable to the commission of this offense.

10              Do you understand that?

11              THE DEFENDANT:  Yes, your Honor.

12              MS. MARTIN:  Your Honor, I just want to -- as your

13   Honor can probably tell from the plea agreement, there's a

14   dispute between the parties about loss amount, which is related

15   both to restitution and forfeiture, although restitution and

16   forfeiture would likely be different amounts here.  So for the

17   purposes of the plea agreement, because that amount doesn't

18   have to be set at the time of the plea, we're leaving it open

19   and there is a floor of 1.5 million, and a ceiling of

20   $65 million, which matches the range and the loss amount.

21              I don't anticipate, as I told Mr. Burke, that it

22   would be 65 million, but we do anticipate that it would be

23   significantly greater than 1.5 million; probably somewhere in

24   the neighborhood of 40 million for restitution, not necessarily

25   for forfeiture.  So that's why that's a very conservative

1    estimate to make sure that we have room, because we're still

2    getting loss amounts in from insurance companies.

3              THE COURT:  Okay.

4              MS. MARTIN:  And like I said, the parties are

5    disputing that and we anticipate a *Fatico* hearing for loss.  So

6    that's related.

7              THE COURT:  So, Mr. Spina, did you just hear what

8    Ms. Martin said?

9              THE DEFENDANT:  Yes, I did, your Honor.

10             THE COURT:  Okay.  And it's a wide range, but it's a

11   wide range because they don't know where it's going to lead to.

12   But for the purposes of today, you understand that the floor is

13   at 1.5 million, and the highest amount is 65 million.

14             You understand that, right?

15             THE DEFENDANT:  I do, your Honor.

16             THE COURT:  Now, on the issue of forfeiture, is it

17   the same range, Ms. Martin, or is it different?

18             MS. MARTIN:  It is the same range, your Honor.

19             In terms of forfeiture, the defendant can only be

20   responsible for funds for which he either personally got or

21   controlled.  In this case, we think he personally got somewhere

22   in the neighborhood of 9 to 10 million, but that he had control

23   over significantly more than that.

24             So, again, $65,000 is sort of -- 65 million, excuse

25   me, is very high, but we do think that the number could be well

1    north of 10 million and so we're just putting a range.  But

2    like I said, the parties -- part of the reason of having a

3    *Fatico* is to sort of come to some sort of determination with

4    respect to all of those amounts.

5              THE COURT:  Okay.

6              Mr. Spina, do you understand that as Ms. Martin

7    explained, and have you had an opportunity to discuss that with

8    your attorney prior to today?

9              THE DEFENDANT:  I understood what she said.  I

10   believe that's the first time I'm hearing those numbers, your

11   Honor.

12             THE COURT:  Okay.  I'm just going to give you one

13   moment, Mr. Burke.

14             MR. BURKE:  Yes.

15             THE COURT:  So you can either respond to Ms. Martin

16   or have an opportunity to explain to Mr. Spina, because you may

17   not have heard them in that context, and I want to make sure

18   that Mr. Burke will explain to you and that you understand it.

19             THE DEFENDANT:  Thank you.

20             (Pause)

21             THE COURT:  Okay.  Mr. Spina, do you understand now?

22             THE DEFENDANT:  Yes, I do, your Honor.

23             THE COURT:  Okay.  Thank you.

24             And so, Mr. Spina, do you understand that these are

25   the possible sentences that could be imposed following a plea

1    of guilty in this matter?

2              THE DEFENDANT:  I do, your Honor.

3              THE COURT:  And I believe you said you're a US

4    citizen; right?

5              THE DEFENDANT:  That's correct, your Honor.

6              THE COURT:  Okay.  Do you also understand that you're

7    pleading guilty to a felony offense and that such an

8    adjudication may deprive you of certain valuable civil rights,

9    which may include the right to vote; the right to hold public

10   office; the right to serve on a jury; the right to possess any

11   type of firearm, including rifles and shotguns; the right to be

12   considered for certain types of employment or to be bonded; to

13   serve in the United States military; and the right to possess

14   or obtain certain government issued licenses, including

15   licenses that may be required in certain professions and

16   occupations?

17             Do you understand all that?

18             THE DEFENDANT:  I do, your Honor.

19             THE COURT:  Do you understand that these are the

20   possible legal consequences of a guilty plea?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you understand that the United States

23   Sentencing Commission has issued guidelines for judges to

24   follow in determining the appropriate sentence in a criminal

25   case?

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  Do you understand that these guidelines

3    are not mandatory, but they must be considered by the Court,

4    along with other factors listed at 18 U.S.C., Section 3553,

5    when the judge determines the appropriate sentence to impose,

6    including possible departures from the guidelines?

7            THE DEFENDANT:  I do, your Honor.

8            THE COURT:  Have you and your attorney talked about

9    how the sentencing guidelines would be calculated in your case?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  So under this plea agreement, there's

12    clearly a dispute as to the loss amount, which Ms. Martin was

13    talking about earlier and which is set forth in here.  And that

14    you, Mr. Spina, and your attorney are contending that the loss

15    was more than 1.5 million, but not more than 3.5 million, which

16    would equate to a different level under the guidelines.

17           The government contends that the loss was more than

18    25 million, but not more than 65 million, and that would equate

19    to a different level.

20           So when I'm going to talk to you about -- that's a

21    factual dispute that will be decided by the district judge, but

22    what that does, because there's this dispute, it changes the

23    guidelines offense level, so it's either a 29 or 37.

24           So when I'm going to talk to you right now about what

25    the plea agreement sets forth as a stipulated guidelines range,

1    but that plea agreement, you'll see that there's guideline

2    range depending on the loss amount.  So we're going to go over

3    that right now so it's clear.

4            The plea agreement in this case sets forth a

5    stipulated sentencing range if the loss amount is more than

6    1.5 million, but not more than 3.5 million, and the loss to

7    Medicaid is less than 1 million.

8            Well, if the loss amount is more than 1.5 million,

9    but not more than 3.5 million, I believe the guideline range is

10   87 to 108 months imprisonment.

11           Is that correct how I'm reading that, Ms. Martin?

12           MS. MARTIN:  Yes, your Honor.  The stipulated

13   guideline range for the purposes of the plea agreement is 87 to

14   120, but that's sort of at the end.

15           THE COURT:  Yes.

16           MS. MARTIN:  But, yes, you are correct.  If the Court

17   finds the loss amount is between 1.5 and 3.5, and the loss to

18   Medicare is less than a million dollars, then, yes, it is 87 to

19   108 months.

20           THE COURT:  And if the Court should find the

21   guideline range -- just going to go over it exactly as it is

22   written so I don't interpret it incorrectly.

23           The guideline range would be 210 to 262 months

24   imprisonment if the loss amount is more than 25 million but

25   less than 65 million, and the enhancement pursuant to USSG

1    Section 2B1.1(b)(7) applies and that would yield a total

2    sentencing range of 87 to 262 months imprisonment.  The

3    statutory maximum for Count One is 120 months.

4              Do you understand that?

5              THE DEFENDANT:  I do, your Honor.

6              THE COURT:  That's the total sentencing range is 87

7    to 120 months imprisonment.

8              Do you understand that?

9              THE DEFENDANT:  I do.

10              THE COURT:  The fine range is also different,

11    depending on which guideline level the Court finds is

12    applicable.  At guideline level 29, the applicable fine range

13    is 30 to 300,000.  At guideline level 37, the applicable fine

14    range is 40 to 400,000.

15              Do you understand that?

16              THE DEFENDANT:  I do.

17              THE COURT:  Do you understand that this is simply an

18    understanding between you and your lawyer and the lawyer for

19    the government, and it's not even a complete understanding,

20    because there are ranges, but that it is not binding on the

21    district judge when he imposes sentence?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Okay.  Do you understand the district

24    judge will consider the guidelines, will determine what the

25    appropriate guideline offense level is, and will impose a

1    sentence in accordance with the statute, which, in this case, a

2    prison term will not be -- what do we have, statutory maximum

3    is 120 months; correct?

4              MS. MARTIN:  Yes, your Honor.

5              THE COURT:  Do you agree, Mr. Burke?

6              MR. BURKE:  Yes, your Honor.

7              THE COURT:  Okay.  Do you understand that, Mr. Spina?

8              THE DEFENDANT:  I do, your Honor.

9              THE COURT:  Do you understand that the Court will not

10   be able to determine the appropriate sentence until after a

11   presentence report has been prepared and until you and your

12   attorney, as well as the government, have had an opportunity to

13   challenge the facts reported in the presentence report, as well

14   as the calculation of the sentencing guideline range, and any

15   sentence recommendation in that report?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you also understand that if there are

18   any objections to the presentence report that those objections

19   will be ruled on by the Court and, if necessary, a hearing will

20   be held to determine what information is relevant to the

21   Court's determination of the sentence?

22             Do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             MR. BURKE:  Your Honor, if I may, just as to the

25   criminal history.

1           THE COURT:  Yes.

2           MR. BURKE:  I did want to bring it to the Court's

3   attention one point.

4           Paragraph -- on page 3, paragraph B1, it references a

5   DWI from 1982 that was adjourned in contemplation of dismissal.

6           THE COURT:  I saw that.

7           MR. BURKE:  And adjournment in contemplation of

8   dismissal does not result in any criminal history points, nor

9   does it result in any criminal conviction.

10          And the section under New York State Law that

11  controls that is the Criminal Procedure Law 170.55, and in

12  particular, 170.55, sub 8:  Upon the dismissal of an accusatory

13  instrument, pursuant to that section, the arrest and

14  prosecution shall be deemed a nullity and the defendant shall

15  be restored in contemplation of the law to the status he

16  occupied before his arrest and prosecution.

17          So just for a complete narrative as to the

18  applicability of an A/CD in New York state is that it's as if

19  there was no arrest.  It's a nullity.

20          THE COURT:  Okay.  And the way I'm reading this,

21  Ms. Martin, you don't have any objection to that

22  interpretation.

23          MS. MARTIN:  No, not at all.  Like I said, we just

24  include it because it comes up on his rap sheet, so the PSR

25  will include it.  So I was just trying to be complete.  But no,

1   and it has no affect on the guidelines.

2           THE COURT:  Okay.  Thank you.

3           Under this agreement, Mr. Spina, you're agreeing not

4   to file a direct appeal, nor bring a collateral challenge,

5   including but not limited to an application under Title 28,

6   United States Code, Section 2255, and/or Section 2241 of any

7   sentence within or below the stipulated guideline range of 87

8   to 121 -- 120 months imprisonment, and the government will

9   not appeal any sentence within or above the stipulated

10  guideline range.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  You're also agreeing not to appeal any

14  term of a supervised release that is less than or equal to the

15  statutory maximum.

16          Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  You're also agreeing not to appeal any

19  fine that is less than or equal to 400,000, and the government

20  agrees not to appeal any fine that is greater than or equal to

21  30,000.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  You're also agreeing not to appeal any

25  restitution amount that is less than or equal to 65 million,

1    and the government agrees not to appeal any restitution amount

2    that is greater than or equal to 1.5 million.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.  I have one

5    question.  May I ask?

6              THE COURT:  Yes.

7              (Pause)

8              THE COURT:  Okay.  You're also agreeing not to appeal

9    any forfeiture amount that is less than or equal to

10   1.5 million, and the government agrees not to appeal any

11   forfeiture amount that is greater than or equal to 65 million.

12             Do you understand all that?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Do you also understand --

15             (Pause)

16             MR. BURKE:  I'm sorry, your Honor.  One moment.

17             THE COURT:  That's okay.

18             (Pause)

19             THE COURT:  Do you also understand, Mr. Spina, that

20   if you disagree with the Court's sentencing decision, that will

21   not give you a basis for withdrawing your plea of guilty?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you also understand that parole has

24   been abolished, and if you are sentenced to a term of

25   imprisonment, you will not be eligible for early release on

1   parole?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Do you understand that you do not have to

4   plead guilty, and you have an absolute right to plead not

5   guilty, and to have the matter go to trial by judge or by jury?

6            THE DEFENDANT:  I do, your Honor.

7            THE COURT:  Do you understand that if you choose to

8   plead not guilty, you are entitled to have a speedy and public

9   trial of your case?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Do you understand that at any trial of

12   this matter, you would be entitled to the presumption of

13   innocence, and that the presumption would remain with you until

14   the government proves each and every element of the crime

15   charged beyond a reasonable doubt, to the satisfaction of the

16   judge, if it's a judge trial, or to the unanimous satisfaction

17   of the jury, if it's a jury trial?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  At that trial you would have the right,

20   with the assistance of your attorney, to confront and cross

21   examine the witnesses against you.  You would have the right to

22   call witnesses to testify for you and to have subpoenas issued

23   to compel witnesses to give testimony.

24            You would also have the right to testify at your

25   trial, but you could not be forced to testify.  If you decide

1    not to testify, your decision to remain silent could not be

2    held against you in any way.

3                Do you understand that?

4                THE DEFENDANT:  I do, your Honor.

5                THE COURT:  At your trial, you would have the right,

6    which I've already mentioned, to the assistance of an attorney,

7    and to have an attorney appointed to represent you if you could

8    not afford counsel.

9                Do you understand that?

10                THE DEFENDANT:  Yes, your Honor.

11                THE COURT:  Do you understand that if you plead

12   guilty to the charges in this felony indictment, that you would

13   give up your right to a trial, and the except for the right to

14   counsel, you'd give up all the other rights which I've

15   explained to you here?

16                THE DEFENDANT:  Yes, your Honor.

17                THE COURT:  Before I proceed to my last question and

18   go to the plea allocution stage, is there anything else in the

19   plea agreement that counsel would like me to review with

20   Mr. Spina?

21                MS. MARTIN:  No, your Honor.

22                MR. BURKE:  No, your Honor.

23                THE COURT:  Thank you.

24                Mr. Spina, have you clearly heard and understood

25   everything I've said to you?

1          THE DEFENDANT:  I have, your Honor.

2          THE COURT:  Do you have any questions for me or for

3    your attorney about anything I've said or about anything I've

4    asked you?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Okay.  Ms. Martin, I'd like you to tell

7    me what are the elements of the offense, and what is the

8    government prepared to prove at trial to establish those

9    elements.

10         MS. MARTIN:  Yes, your Honor.

11         The government -- Mr. Spina is pleading to Count One

12   of the indictment, which is conspiracy to commit healthcare

13   fraud.  To prove a conspiracy to commit healthcare fraud in

14   violation of Section -- Title 18, United States Code, Section

15   1349, the government must demonstrate:

16         One, that two or more people entered into an

17   agreement to commit healthcare fraud; and

18         Two, that each defendant knowingly and intentionally

19   joined in the agreement.

20         To prove a violation of Section 1347, which is

21   healthcare fraud, the government must prove:

22         One, a scheme to defraud or a scheme to obtain money

23   or property by means of material, false and fraudulent

24   pretenses, representations or promises in connection with the

25   delivery of or payment for healthcare benefits;

                Angela O'Donnell, RPR, 914-390-4025

1           Two, the defendant knowingly and willfully executed

2   or attempted to execute that scheme with the intent to defraud;

3   and

4           Three, the target of the scheme was a healthcare

5   benefit program.

6           At trial, the government would prove the following

7   through documentary evidence, including emails, consensual

8   recordings and witness testimony, that from in or about 2011,

9   through in or about September 2017, the defendant, a licensed

10  chiropractor, participated in a widespread scheme to defraud

11  Medicare and other healthcare benefit programs, as that term is

12  defined in Title 18.  In particular, the government would prove

13  that during the relevant time period, Dolson Avenue Medical was

14  a registered medical service corporation in New York state that

15  purported to provide a variety of pain management and

16  rehabilitation services, including physical medicine and

17  rehabilitation, chiropractic services, physical therapy,

18  diagnostic testing and acupuncture.

19          The practice primarily provided treatment services

20  from its clinic located at 201 Dolson Avenue in Middletown, New

21  York.  In addition to Dolson Avenue Medical, multiple other

22  corporations, including other registered medical corporations,

23  billed Medicare and other insurance providers from the 201

24  Dolson Avenue location during the relevant time period.

25          At trial, the government would prove that although on

1  paper Dolson Avenue Medical and the associated businesses

2  appeared to be separate entities owned by multiple different

3  qualified individuals, in reality, the defendant and his

4  co-conspirator, Jeffrey Spina, also a doctor of chiropractic,

5  were the true owners and operators of the different medical

6  service corporations.

7       The government would prove that such ownership was

8  contrary to New York State Law, which at all times relevant to

9  the charged conspiracy required that medical service

10  corporations in New York state be owned and operated by

11  licensed physicians.  New York state also had similar

12  requirements for physical therapy and acupuncture corporations.

13       The government would prove that the defendant, aware

14  that he could not legally own medical corporations and some of

15  the associated businesses, went to great lengths to conceal his

16  control and ownership of Dolson Avenue Medical, and some of the

17  associated businesses.

18       For example, the defendant recruited medical doctors

19  and other qualified professionals to serve as the nominee

20  owners of the businesses when, in reality, James Spina and

21  Jeffrey Spina were the true owners and operators of Dolson

22  Avenue Medical.

23       The government would also prove that James Spina

24  further concealed his ownership by transferring revenues of

25  these medical companies into purported real estate and

1    marketing companies he and Jeffrey Spina owned, and referred to

2    these payments as rent or marketing fees.

3           In addition to James Spina's fraudulent ownership of

4    Dolson Avenue Medical and the associated businesses, the

5    government would prove that James Spina routinely submitted or

6    caused to be submitted fraudulent claims to Medicare and other

7    insurance providers.

8           I would note initially that the claims were false, in

9    part because it listed the wrong owners.  It represented that

10   medical -- licensed medical doctors and other qualified

11   professionals were the owners in fact of the businesses when

12   they were not.  The claims were also false because, among other

13   reasons, the services were not medically necessary.  The

14   medical services were never actually rendered or the services

15   were double billed, meaning that the defendant submitted and/or

16   caused to be submitted multiple claims for the same service to

17   two different insurance providers.

18          With respect to billing for medical unnecessary

19   services, the government would prove that James Spina

20   prescribed or encouraged other medical providers to prescribe

21   services such osteo manipulative therapy, EMGs, MRIs and

22   certain durable medical equipment, like back braces, because he

23   either had a kickback arrangement with a third-party provider

24   of this service, such as with the MRIs or durable medical

25   equipment, or the services were reimbursed at a higher rate,

1    not because they were medically necessary.

2              The government would further prove that as part of

3    the scheme, the defendant regularly altered and fabricated

4    medical records himself and also directed others to make up

5    and/or falsify patient records.

6              Similarly, the government would prove in connection

7    with audits by Medicare and other insurance providers, the

8    defendant impeded and obstructed the audits by fabricating

9    records and concealing patient files.

10             In connection with this wide-ranging scheme, the

11   defendant submitted tens of millions of dollars of false claims

12   to Medicare and other insurance providers, and we would prove

13   or we intend to prove that it resulted in tens of millions of

14   dollars of losses.

15             Finally, the government would prove that the

16   defendant acted knowingly and willfully.

17             THE COURT:  And all this happened, you said, in

18   Middletown, New York?

19             MS. MARTIN:  Yes, your Honor.  The clinic is located

20   in Middle -- was located in Middletown, New York.

21             THE COURT:  Okay.

22             MS. MARTIN:  That's where the billing office was

23   where things were --

24             THE COURT:  Thank you.

25             MS. MARTIN:  -- created and submitted.

1          THE COURT:  Okay, Mr. Spina, did you hear what AUSA

2   Martin said?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  At this time, how do you wish to plead to

5   the charge?

6          MR. BURKE:  Your Honor, I just want to have clarity.

7   He's going to allocute.  He heard what she said and now he's

8   prepared to enter his plea.

9          THE COURT:  Okay.

10          MR. BURKE:  Not accepting everything that --

11          THE COURT:  I understand that.  I just want to make

12   sure you heard what Ms. Martin said.

13          THE DEFENDANT:  Yes, I did, your Honor.

14          THE COURT:  And now I'm going to ask you how you wish

15   to plead, and you're only pleading guilty to Count One of the

16   indictment.  So I want to know how do you wish to plead to

17   Count One of the indictment.  And then after I will ask you to

18   tell me in your own words what you did.

19          THE DEFENDANT:  Okay.

20          THE COURT:  But the first I want to do is how do you

21   wish to plead to Count One of the indictment?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  Okay.  Has anyone threatened you or

24   coerced you or pressured you improperly in order to get you to

25   plead guilty to these charges?

1           THE DEFENDANT:  They have not.

2           THE COURT:  Has anyone made any promises to you in

3    order to induce you to plead guilty?

4           THE DEFENDANT:  No.

5           THE COURT:  Has anyone made any specific promises to

6    you about what the sentence of the Court will be?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  Mr. Spina, can you tell me in your own

9    words what you did to commit this crime?

10          THE DEFENDANT:  Yes, your Honor.

11          May I ask Mr. Burke one question?

12          THE COURT:  Of course.

13          (Pause)

14          THE COURT:  Are you ready, Mr. Spina, to tell me in

15   your own words what you did to commit this crime?

16          THE DEFENDANT:  Yes, your Honor.

17          From 2011 to 2017, I agreed to participate with

18   others to financially benefit from services rendered by a

19   medical corporation in which I was not entitled to and which is

20   not permissible or legal under the New York State Medical

21   Corporate Practice Law.

22          These corporation finance's entities were controlled

23   by myself and my brother, which we exercised control over the

24   various expenses income and profits.

25          MR. BURKE:  Excuse me.

```
 1              (Pause)
 2              MR. BURKE:  He's going to start over.
 3              THE COURT:  Okay.
 4              THE DEFENDANT:  In 2011 to 2017, I participated with
 5    other --
 6              (Pause)
 7              THE COURT:  Mr. Spina, you ready?
 8              THE DEFENDANT:  From 2011 to 2017 --
 9              THE COURT:  And Mr. Spina.
10              THE DEFENDANT:  Yes, sir.  I'm sorry.
11              THE COURT:  Just slow down.
12              THE DEFENDANT:  Your Honor.
13              THE COURT:  Only because I need to be able to hear
14    you and understand everything you said, and if you speak too
15    quickly, I will be struggling so --
16              THE DEFENDANT:  I'm sorry.
17              THE COURT:  -- if you could start again --
18              THE DEFENDANT:  Yes.
19              THE COURT:  -- and go a little bit more slowly.
20              THE DEFENDANT:  Yes.  From 2011 to 2017, I did
21    knowingly agree with others to participate with medical
22    corporations for services that were billed.  These corporations
23    were owned by medical doctors; however, the finances were
24    controlled by myself and my brother of which we were not
25    entitled to those monies.  We benefited financially from these
```

1     corporations which otherwise, under the New York State Law, we

2     are not entitled to.  And this was in violation of the law.

3               THE COURT:  Okay.  Let me ask you some questions.

4               THE DEFENDANT:  Certainly.

5               THE COURT:  We'll start with the easy ones.  Where

6     did this happen?

7               THE DEFENDANT:  At the address that Ms. Martin

8     mentioned; 201 Dolson Avenue.

9               THE COURT:  In Middletown, New York.

10              THE DEFENDANT:  In Middletown, New York.

11              THE COURT:  Okay.  Did you commit these acts

12    knowingly and willingly?

13              When you committed these acts, did you commit them

14    knowingly and willfully?

15              THE DEFENDANT:  Yes, your Honor.

16              THE COURT:  And did you know it was against the law

17    to do what you were doing at the time that you did them?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Okay.  So now I want to ask some specific

20    facts.  You said you agreed with others --

21              THE DEFENDANT:  Yes.

22              THE COURT:  -- and you knowingly and intentionally

23    participated in this.  I want to make sure the elements of the

24    healthcare fraud have been met.  So what was the healthcare

25    benefit program that was the target of the fraud that you are

                  Angela O'Donnell, RPR, 914-390-4025

1    pleading guilty to?

2            THE DEFENDANT:  The healthcare insurance companies,

3    your Honor.

4            THE COURT:  I didn't --

5            THE DEFENDANT:  The healthcare insurance companies.

6            THE COURT:  Healthcare insurance companies.  Okay.

7            MS. MARTIN:  And I assume Mr. Burke would confirm

8    that there's no dispute that they are healthcare benefit

9    programs.  It's Medicare and multiple other insurance

10   providers.

11           MR. BURKE:  We don't contest that, your Honor.

12           THE COURT:  Okay.  And you, during this conspiracy,

13   you received property as a result this, property and money, as

14   a result of this scheme to defraud and you benefited from it;

15   is that correct?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Okay.

18           Ms. Martin, is there anything else which you would

19   like me to allocute Mr. Spina on?

20           MS. MARTIN:  Just that, sort of -- I guess that we

21   obviously view that the scheme as much broader, but I think --

22   I've spoken to Mr. Burke and we think that the scheme, the

23   narrower scheme about the fraudulent ownership is sufficient to

24   meet the elements.  But I just want it to be clear that he

25   understands, Mr. Spina understands that the bills that were

1    submitted, or he caused to be submitted to Medicare and the

2    other insurance providers, he understood were false because

3    they represented -- they had material misstatements about the

4    ownership of the -- the medical corporations and some of the

5    other corporations as well.

6                   THE COURT:  Okay.

7                   So, Mr. Spina, when bills were submitted to the

8    insurance companies and to Medicare --

9                   THE DEFENDANT:  Yes.

10                  THE COURT:  -- the ownership listed the owner's name

11   of these -- of this medical company; right?

12                  THE DEFENDANT:  Yes, your Honor.

13                  THE COURT:  Okay.  Did you understand when you were

14   submitting these bills and listing that, that that was false

15   information that you were providing to the insurance companies

16   and to Medicare?

17                  MR. BURKE:  Your Honor, just for some clarity.

18                  THE COURT:  Yes.

19                  MR. BURKE:  I think their theory on this is that he

20   and his brother were the de facto owners.  So there was

21   ownership by the medical doctor of the corporation --

22                  THE COURT:  Yes.

23                  MR. BURKE:  -- but they exercised the control.  And

24   that's what he's --

25                  MS. MARTIN:  They're nominal owners.

1          MR. BURKE:  They're nominal owners; correct.

2          MS. MARTIN:  Which I think is what he just allocuted

3     to.

4          MR. BURKE:  Correct.  He said that he is the --

5          THE COURT:  Yes, but I want to understand -- part of

6     the thing that the government wants to prove and part of the

7     fraud is submitting information to them that was false to lead

8     them to pay on these claims which had false information on

9     them.  And part of the false information that was on them, as I

10    understand it, is that the names -- the owners listed on paper

11    were nominal owners and that the true owners were Mr. Spina and

12    his brother.

13         And I think that's an important element that has to

14    be met here.  So, Mr. -- I believe Mr. Spina has to allocute to

15    that and explain that he understood that.

16         MS. MARTIN:  Yes, your Honor.  Thank you.

17         THE DEFENDANT:  Your Honor, I do understand that and

18    at the time of the activity, if a doctor saw the patient and he

19    billed it out, I wasn't --

20         (Pause)

21         MS. MARTIN:  Your Honor, if I may.  I know they are

22    speaking.  I think your Honor understands, but I just want to

23    make it clear, I don't know if this would be helpful or not.

24    It is the government's view that Dolson Avenue Medical,

25    Catskill Medical, this other Physical Medicine and Diagnostic,

1    those are just three examples, we think there are other

2    businesses, but paperwork was submitted to Medicare and

3    insurance providers that listed registered medical doctors,

4    licensed medical physicians, as the owners of those businesses.

5           We believe and would be prepared to prove that, in

6    fact, the owners, the people who controlled the ownership and

7    operated those were James Spina and Jeffrey Spina, who are

8    doctors of chiropractic, they cannot own medical corporations.

9           They submitted bills to the insurance providers that

10   listed -- or the history or the application paperwork listed

11   these medical doctors as the owners, when they weren't.  That's

12   material information to Medicare and the insurance providers,

13   and that is how those claims that were submitted were false.

14           THE DEFENDANT:  Yes.  Yes, your Honor.  Your Honor.

15           THE COURT:  You prepared --

16           THE DEFENDANT:  I'd like --

17           THE COURT:  Mr. Burke.

18           MR. BURKE:  One second.

19           THE COURT:  Yes.

20           (Pause)

21           MR. BURKE:  Your Honor, perhaps I can -- if the Court

22   would indulge me to ask a few questions of my own client about

23   what I think (indiscernible) the issues that the Court had.

24           Mr. Spina, the corporations and the paperwork related

25   to the corporations that were submitted to the insurance

1   companies indicated that the doctors owned these corporations;

2   correct?

3            THE DEFENDANT:  Yes.  Yes, that's correct.

4            MR. BURKE:  And in fact, you and your brother

5   controlled --

6            THE DEFENDANT:  I'm not sure if they owned -- that

7   they were going to provide service to the various carriers.

8   I'm not sure if it said that they were the owner.

9            Your Honor, here's what I'd like to say.  There's

10  monies that came to me that were incorrect, that I knowingly go

11  ahead and send and submit false claims saying that the services

12  were now provided.  Whoever provided the service, what it has

13  the signature of is the signature of the doctor who provided

14  the services for that --

15           THE COURT:  Did you ever encourage those doctors to

16  provide --

17           THE DEFENDANT:  (Indiscernible).

18           THE COURT:  -- to bill for things that weren't being

19  billed?

20           MR. BURKE:  Your Honor, that's not part of the

21  allocution that he's admitting to.

22           THE COURT:  Okay.

23           MR. BURKE:  So I want to just stay --

24           THE COURT:  Okay.  So here's the thing, as it stands

25  right now --

1            THE DEFENDANT:  Yes.

2            THE COURT:  -- I can't accept this allocution.

3            MR. BURKE:  So let me just speak to him for a moment.

4            THE COURT:  So we're going to take a little recess.

5            MR. BURKE:  Yes.

6            THE COURT:  Because I'm not going to accept the

7    allocution based on how it's been done, because your client, to

8    me, doesn't seem -- I'm not saying you're doing anything wrong,

9    Mr. Spina.  It's my responsibility to make sure that you're not

10   pleading something you're not guilty to.

11            I believe that in a crime like this, it's complex,

12   and I want to make sure you understood, you know, what you're

13   pleading to.  We've done that.

14            And I want to make sure that you're pleading guilty

15   because you are guilty and so, therefore, one of the things is

16   what you knew at the time when you were doing it, and was it

17   done knowingly and willfully?

18            So I'm going to ask -- I think it would be just good

19   to have you have this conversation without me standing here

20   breathing down your neck.  If we can't -- I'm going to give you

21   about five minutes, Mr. Burke, and if we can't seem to get it

22   right tonight, then we'll just close the proceeding down, and I

23   won't accept the plea at this time.

24            But I think it would be good just to take five

25   minutes for you guys to talk.  Okay?

1          MR. BURKE:  Thank you.

2          THE COURT:  Thank you.

3          (Recess taken)

4          THE COURT:  Okay, are we ready to proceed?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Okay.  Mr. Burke, how would you like to

7    proceed, would you like to have your client supplement what he

8    was saying?

9          MR. BURKE:  Yeah, I think what makes the most sense,

10   he's just going to start again from the top as to the

11   allocution that has been written out, and we've spoken about,

12   that satisfies the elements of the offense that he is pleading

13   guilty to.

14         THE COURT:  Okay.

15         MR. BURKE:  Okay?

16         THE DEFENDANT:  Your Honor, I'm sorry I had a

17   misunderstanding.  So I apologize for that.

18         THE COURT:  Okay.  Thank you, Mr. Spina, you can

19   proceed.

20         THE DEFENDANT:  Yes.  In 2011 to 2017, I did

21   knowingly and intentionally agree with others to participate

22   with medical corporations that billed medical insurance

23   companies for services rendered.  These corporations falsely

24   appeared as they were owned by a medical doctor, but were in

25   fact were controlled by myself and my brother, in which we

                    Angela O'Donnell, RPR, 914-390-4025

1   exercised control over the finances and the expenses of these

2   corporations.

3           Claims were submitted to healthcare insurance

4   companies to obtain payment.  We thereby financially benefited

5   from these corporations, which were otherwise -- which we were

6   otherwise not entitled to under the New York State Law.  I knew

7   what I was doing was in violation of the law.

8           THE COURT:  Ms. Martin, what do you think?

9           MS. MARTIN:  Your Honor, I believe that -- I'm just

10  trying to think through.  He talks really fast.  I just want to

11  make sure I understand.  I believe that is sufficient.

12          He understood that the claims that were submitted to

13  Medicare and the insurance providers contained false

14  information about ownership.

15          THE COURT:  And that's what I want to confirm too.  I

16  think that's there, but it wasn't as explicit as I think you

17  want and I want.

18          So at the time that you submitted these bills to the

19  providers -- it's been a long day for me, so bear with me.

20          You knew that the ownership information that was

21  placed on those bills was fraudulent.

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And when you did it, you did it knowingly

24  and intentionally.

25          THE DEFENDANT:  Yes, your Honor.

1              THE COURT:  Ms. Martin.

2              MS. MARTIN:  Thank you, your Honor.  I think that's

3     sufficient to meet the elements of the statute.

4              THE COURT:  Thank you.

5              Is there anything else which either counsel believes

6     this Court needs to elicit from the defendant before making the

7     recommendation contemplated by Rule 11 of the Federal Rules of

8     Criminal Procedure?

9              MS. MARTIN:  No, your Honor.

10             MR. BURKE:  No, your Honor.

11             THE COURT:  Mr. Burke, do you know of any reason why

12    the Court should not recommend acceptance of your client's plea

13    of guilty in this matter?

14             MR. BURKE:  I don't.

15             THE COURT:  Ms. Martin, do you know of any reason why

16    the Court should not recommend acceptance of the plea?

17             MS. MARTIN:  No, your Honor.

18             THE COURT:  Mr. Spina, in light of everything that

19    has been said here today, is it still your wish to plead guilty

20    to Count One contained in the felony indictment?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  On the basis of the allocution and the

23    responses to my questions, I find that the defendant is fully

24    competent and capable of entering an informed plea.

25             I am satisfied, Mr. Spina, that you understand your

1   rights, including your right to go to trial, that you are aware

2   of the consequences of your plea, including the sentence that

3   may be imposed.  Based on this plea allocution, I find that the

4   plea is knowing and voluntary and is supported by an

5   independent factual basis for each and every element of the

6   crime charged.

7              Accordingly, I respectfully report and recommend to

8   Judge Karas that the plea be accepted and the defendant be

9   adjudged guilty of the offense charged in Count One of the

10  felony indictment.

11             I direct that a presentence investigation be

12  conducted by the United States Department of Probation and that

13  a presentence report will be prepared.

14             Within 14 days from today, Mr. Spina, you need to go

15  to the Department of Probation, and your attorney can accompany

16  you, and you'll be interviewed by a representative from the

17  Department of Probation.

18             I want to make sure you understand that you have to

19  be fully honest and truthful during that interview, because if

20  it comes to the Court that you have provided false, incomplete

21  or misleading information, that may be held against you at the

22  time of sentencing.

23             Do you understand that?

24             THE DEFENDANT:  Yes, I do, your Honor.

25             THE COURT:  And Ms. Martin, the prosecution case

```
 1    summary for purposes of the presentence report is to be

 2    delivered to the Probation Department no later than 14 days

 3    from today.  So that's May 16, 2019.

 4              MS. MARTIN:  Yes, your Honor.

 5              THE COURT:  And I'm going to further direct that the

 6    court reporter provide a transcript of these proceedings within

 7    30 days setting forth my report and recommendation of Judge

 8    Karas.  The transcript is to come to me first for review.

 9              The matter is adjourned for sentencing for

10    September 17 at 10:00 a.m. before Judge Karas.  You should

11    contact Judge Karas' chambers to confirm the date and time of

12    sentencing.

13              Is there anything further we need to do today?

14              MR. BURKE:  Your Honor, only as to that date.  I'm on

15    trial then, but I will speak to Judge Karas as to an

16    appropriate sentencing date --

17              THE COURT:  I'm sure he will accommodate your

18    schedule, Mr. Burke.  This is probably more of a control date

19    for him.

20              MR. BURKE:  Thank you.

21              THE COURT:  Anything else?

22              MS. MARTIN:  Nothing from the government, your Honor.

23              THE COURT:  Okay.

24              MR. BURKE:  Nothing from the defense.

25              THE COURT:  Thank you.
```

1              Good luck, Mr. Spina.

2              THE DEFENDANT:  Thank you.

3              (Proceedings concluded).

4    Certified to be a true and accurate

5    transcript of the digital electronic

6    recording to the best of my ability.

7    _____

8    U.S. District Court

9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25